JONATHAN A. PORTER

v.

CHARLES D. WILSON

Record No. 911721

September 18, 1992

Present: All the Justices

*Alan K. Caudell (L. Harvey Neff, Jr.; Neff & Caudell,* on brief), for appellee.

*John W. Parsons* for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

In this trespass action, we consider whether a litigant holds legal title of record to 26 acres of property and, if so, whether he may recover treble damages for the removal of timber from the property, as permitted by Code § 55-334.

On January 4, 1892, T.M. Porter gave R.B. Noblett a "title bond" to a 53-acre tract of land on Iron Mountain in Grayson

County, but died before executing a deed to Noblett.* Although Noblett never acquired record title to the 53 acres, he claimed ownership of the property.

Noblett and his wife, Mollie, conveyed 26 acres of the 53-acre tract to David A. Rhudy, by deed dated October 5, 1931, and recorded May 14, 1932. Shortly after this conveyance, R.B. Noblett died. Noblett's heirs purportedly conveyed to Carlie D. Noblett the entire 53-acre tract, including the 26 acres previously conveyed to Rhudy, by deed dated June 24, 1932, and recorded July 2, 1932. This deed states, in part:

> 53 acres which was sold to the said R.B. Noblett by Thomas M. Porter, for the sum of Two Hundred and Thirty Dollars, and for which a title bond was executed by the said Porter under the penalty of Four Hundred and Sixty Dollars, bearing date on the 4th day of January 1892. The grantor of this sale haveing [sic] died soon after the execution of the aforesaid title bond, no deed for the land has been made, but the said R.B. Noblett has been in peaceable possession of the same for more than forty years.

Clyde C. Thornbrough (Rhudy's widow) and Ethel Rhudy Porter (Rhudy's only child) conveyed their 26 acres to appellant Jonathan A. Porter by deed dated September 14, 1967, and recorded September 18, 1967. Carlie D. Noblett and his wife, Rose Noblett, conveyed the entire 53 acres to appellee Charles D. Wilson by deed dated June 6, 1963, and recorded June 7, 1963.

Wilson sold timber located upon the 26 acres to a lumber company, which cut and removed the timber. Upon learning of the removal of the timber from the property, Porter sent Wilson a letter dated November 13, 1987, informing him of the purported trespass to the land and the appointment of Thomas E. Moser as ''an experienced timber estimator to determine the damages. . . .'' Wilson denied any trespass and claimed ownership of the 26 acres. Porter obtained a damage estimate and forwarded it to Wilson, who again refused to make payment and reasserted his claim of ownership of the land.

---

* A title bond has been described as a contract to convey land which ''may ripen into an equitable title upon payment of the consideration.'' Black's Law Dictionary 178 (6th ed. 1990).

Porter filed a motion for judgment against Wilson alleging, among other things, that Porter possessed fee simple title of record to the 26-acre tract and that Wilson had committed a trespass. Porter sought compensatory and treble damages as permitted by Code §§ 55-331 through -335. Wilson filed responsive pleadings in which he denied any trespass and asserted record legal title to the 26 acres or, in the alternative, ownership by adverse possession.

At trial, the court struck Porter's claim of record legal title, but permitted him to proceed on a claim of adverse possession. The jury returned a verdict in favor of Porter and fixed his damages at $9,644.50. Upon Wilson's motion, the trial court set the verdict aside because Porter had not pled a claim of adverse possession, and the court entered final judgment for Wilson. We awarded Porter an appeal, and Wilson assigns cross-error.

Porter argues that the trial court erred by striking his claim of record legal title because his predecessor in title, Rhudy, acquired record legal title before Noblett's widow and heir at law purportedly conveyed record legal title to Wilson's predecessor. Wilson does not dispute the fact that Rhudy acquired record title to the 26 acres before Wilson's predecessor acquired his alleged title. Wilson, however, asserts a defense based on his purported superior title. And, to establish his alleged superior title, Wilson must trace title to R.B. Noblett, the common source of his title and Porter's title. *See Garden Realty Corp. v. Price*, 165 Va. 520, 522, 183 S.E. 178, 179 (1936).

■ Ordinarily, Wilson would have had constructive knowledge of Noblett's prior deed to Rhudy. As we have often stated: "Every prudent man about to purchase land searches the records to see whether the property has been previously conveyed or encumbered." *Faison v. Union Camp*, 224 Va. 54, 61, 294 S.E.2d 821, 825 (1982); *Pillow v. Southwest Virginia Improvement Co.*, 92 Va. 144, 152, 23 S.E. 32, 34 (1895). Furthermore, once a deed is recorded, the admission to record is in law notice to the entire world. *Jones v. Folks*, 149 Va. 140, 144, 140 S.E. 126, 127 (1927). Had Wilson reviewed the land records, he would have learned that D.A. Rhudy acquired legal title of record in 1932.

■ Wilson, relying upon Code § 55-105, contends that he is not bound by Rhudy's acquisition of the prior record legal title from Noblett. Code § 55-105 states:

> A purchaser shall not, under this chapter, be affected by the record of a deed or contract made by a person under whom his title is not derived; nor by the record of a deed or contract made by any person under whom the title of such purchaser is derived, if it was made by such person *before he acquired the legal title of record.*

(Emphasis added.) Wilson argues that he is not "affected" by the prior recordation of the deed conveying the 26 acres to Porter's predecessor in title because, in the language of Code § 55-105, the Rhudy deed "was made by [R.B. Noblett] before he acquired legal title of record." We disagree.

Code § 55-105 is inapplicable on its face because Noblett never acquired legal title of record to the disputed 26 acres. Even though Noblett may have acquired title to the property by adverse possession, which conferred upon him a new, independent, unencumbered, and indefeasible title, *McClanahan's Adm'r* v. *Norfolk & Western Railway Co.*, 122 Va. 705, 717, 96 S.E. 453, 472 (1918), that was not legal title of record.

According to the revisors of the Codes of 1919 and 1849, the precursor of Code § 55-105 was enacted to reflect the principle articulated by one of the three judges in *Doswell* v. *Buchanan*, 30 Va. (3 Leigh) 365 (1831):

> [I]f, after a person purchased land or acquired an EQUITABLE INTEREST in it, BUT BEFORE HE ACQUIRED THE LEGAL TITLE, conveyed it, . . . and AFTERWARDS acquired the legal title, and sold the land, the purchaser would not have to go back of the date when the LEGAL title was acquired and would be unaffected by the sale . . . made while he held only any equitable title . . . if he had no knowledge of it.

Revisors' Note, Code § 5201 (1919) (capitalization in the original). *See also* Report of The Revisors of the Code of Virginia 616 (1948). In order for the last clause of Code § 55-105 to apply, those parties who are the source of Wilson's title must later have acquired legal title of record to the property. *See* 2 Raleigh C. Minor, The Law of Real Property § 1319 (Frederick D.G. Ribble ed., 2d ed. 1928). As previously noted, R.B. Noblett, the source of Wilson's title, never acquired legal title of record to the property.

Next, Porter contends that the trial court erred by holding that he was not entitled to recover treble damages as permitted by Code § 55-334. We disagree.

Chapter 18, Article 8 of Title 55 creates certain remedies for the recovery of damages for "encroachment in timber cutting." Code § 55-331 states:

> If any person, firm or corporation, in the course of cutting timber on any timberlands in the State, encroach and cut timber on any timberland, except when acting prudently and under bona fide claim of right, the owner thereof shall, in addition to all other remedies afforded by law, have the benefit of a right to, and a summary remedy for recovery of, damages in an amount as hereinafter specified and recovered as hereinafter provided.

> If the trespass is proven the defendant shall have the burden of proving that he acted prudently and under a bona fide claim of right.

Code § 55-332 creates the procedure which must be followed if a landowner seeks to recover damages as permitted in Article 8. Code § 55-333 identifies certain expenses which may be recovered by the landowner against the trespasser and makes certain defenses available to the trespasser. Code § 55-334 states, in relevant part:

> If, upon receiving notice of the alleged trespass and of the appointment of an estimator, the person so receiving notice does not admit the fact of trespass, he may decline to appoint an estimator and notify the other party to such effect, together with his reason for refusing to appoint an estimator, and in such case the aggrieved party may proceed in the appropriate court of the county and, upon proving the fact of trespass and the amount of damages, may recover triple the amount of damages and costs from the trespassers.

We hold that the trial court did not err by refusing to permit Porter to recover treble damages. Wilson thought he had acquired fee simple title to the 26 acres in 1963. His right of ownership to the land was not challenged by anyone until after the timber had been removed from the land. Wilson retained a surveyor before removing the timber and marked the boundaries of what he thought was his

property so that the lumber company would not remove timber beyond those boundaries. Thus, we hold that treble damages, which are in the nature of a penalty and, therefore, are not favored, *Bowers v. Westvaco Corp.*, 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992), are not recoverable because Wilson "acted prudently and under a bona fide claim of right." Code § 55-331.

■ Assigning cross-error, Wilson argues that the trial court should have stricken Porter's evidence because Porter purportedly failed to show that the 26 acres from which the timber was removed were located within the designated boundaries of his deed. We disagree.

Porter described the boundaries of the 26 acres during the trial, relying upon photographs of the property and monuments. Ethel Leonard, Porter's mother and predecessor in title, testified that the timber was removed from the 26 acres that she had conveyed to her son.

Finally, Wilson argues that the trial court erred because it admitted Porter's estimate of compensatory damages even though the estimate had not been made by the appointed estimator. We disagree.

Code § 55-332 states:

> The owner of the land on which such trespass was committed shall have the right, within thirty days after the discovery of such trespass and the identity of the trespasser, to notify the trespasser and to appoint an experienced timber estimator to determine the amount of damages.

> . . . .

> If the alleged trespasser fails to appoint an estimator within the prescribed time, or to notify, within such time, that the allegation of the fact of trespass is disputed, the estimator appointed by the injured party may make an estimate, and collection or recovery may be had accordingly.

■ Porter appointed Thomas E. Moser, a principal in Blue Ridge Forestry Services, Inc., as a timber estimator. Thomas E. Largen, a consulting forester and employee of Blue Ridge Forestry, assisted Moser. Moser and Largen visited the property together and located

and measured the stumps. Moser assisted Largen with the preliminaries and Largen prepared the final report. Moser supervised Largen's work and both men signed the final report. We hold that the trial court did not err by admitting the report in evidence because Moser collected data and was intimately involved in the preparation of the report.

In view of our holdings, we will reverse that part of the judgment of the trial court which denied Porter's claim of ownership by virtue of legal title of record. We will affirm that part of the judgment which denied the recovery of treble damages and we will reinstate the jury verdict of $9,644.50 and enter final judgment for Porter here.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*