464 S.E.2d 771

**Carol Sue BULLMAN, Plaintiff Below, Appellee,**

**v.**

**D & R LUMBER COMPANY, Defendant Below, Appellant.**

No. 22729.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Oct. 27, 1995.

Carl P. Bryant, Bryant & White, St. Marys, for Appellee.

Richard A. Hayhurst, Parkersburg, for Appellant.

CLECKLEY, Justice:

In this case, we consider whether a plaintiff who elects to seek treble damages for the wrongful cutting of timber as provided by W.Va.Code, 61–3–48a (1983),[1] may also seek punitive damages. The question before us is unanswered by any binding precedent of this Court. To the contrary, we declined the invitation to address this very issue in *Chesser By Hadley v. Hathaway,* 190 W.Va. 594, 439 S.E.2d 459 (1993). Today we hold that an award of punitive damages is not precluded by the recovery of treble damages under the statute.

D & R Lumber Company, the defendant below and appellant herein, appeals the August 15, 1994, order of the Circuit Court of Pleasants County, which denied its motion to set aside judgment, motion for judgment notwithstanding the verdict, and motion for a new trial. In September of 1994, the jury awarded Carol Sue Bullman, the plaintiff below and appellee herein, $5,000 in compensatory damages and $25,000 in punitive damages for the defendant's wrongful removal of trees and excavation of a logging road on her property when it was timbering a contiguous tract. On appeal, the defendant argues in effect that by bringing the action under the treble damage statute, the plaintiff chose the remedy afforded by statute, which is itself punitive, and the punitive damage award is tantamount to double recovery.[2] After reviewing the record and

1. W.Va.Code, 61–3–48a, states:

"Any person who enters upon the land or premises of another without written permission from the owner of the land or premises in order to cut, damage or carry away or cause to be cut, damaged or carried away, any timber, trees, logs, posts, fruit, nuts, growing plant or product of any growing plant, shall be liable to the owner in the amount of three times the value of the timber, trees, growing plants or products thereof, which shall be in addition to and notwithstanding any other penalties by law provided."

2. In addition to the issue regarding treble damages, the plaintiff asserts the claim was barred by the statute of limitations; there was no basis for the punitive damage award; and a post-verdict review of the punitive damage award should have been conducted by the trial court. In our judgment, these claims are lacking in merit and we perceive no basis for reversing the judgment of the court below.

The statute of limitations issue in this case was properly before the jury, sufficient evidence was presented, and the jury, after weighing the evidence, found the plaintiff did not learn the defendant entered upon and cut timber from her property until she received the report from the surveyor. This Court accords deference to the jury's finding, and in the absence of evidence to show the jury was clearly wrong, we decline to reverse its decision.

We also find ample evidence to support the punitive damages award. After reviewing the record, we find there is evidence to support the jury's finding that the defendant's actions were willful. Mr. Boley testified that he specifically questioned Mr. Wilson when he thought the defendant may have been removing trees from the plaintiff's property, and Mr. Wilson stated the defendant had purchased the timber from the plaintiff. The jury may have concluded this blatant misrepresentation was evidence of willfulness and wantonness. Furthermore, the evidence demonstrated the defendant's timbering activities strayed far beyond the Leonard–Bullman boundary line. Finally, the jury may have concluded that a reputable timbering company would have exercised more caution, such as a proper survey of the property with adequate markings, in ascertaining the property line from which it could timber.

The defendant's final argument is that the procedural due process safeguards for punitive damages set forth in *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), were not followed. *See generally Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). In Syllabus Point 5 of *Garnes,* this Court discussed our review of a petition for appeal on the punitive damage issue and stated that "all petitions must address each and every factor set forth in Syllabus Points 3 and 4 of this

briefs of the parties, we affirm the judgment of the trial court.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In 1959, the plaintiff and her husband, Port Nicklas Bullman, now deceased, purchased a 34–acre farm in St. Marys, Pleasants County. Approximately 4 acres surrounding her home is cleared, but the majority of the property is covered by woods and is not fenced. Following her husband's death in 1976, the plaintiff was not sure of her boundary lines as she relied upon his knowledge of the land.

Ray Bowers, a timber broker, purchased timbering rights from the surface owner of a 66–acre tract known as the "Leonard" tract which is adjacent to the plaintiff's property. In November of 1988, the defendant entered into a contract with Mr. Bowers to timber the Leonard tract. Mr. Bowers showed Willard Wilson from D & R Lumber where he could cut timber. The property was marked by flags and was staked. The defendant completed timbering operations by January 30, 1989. However, some machinery was stored along a public road until March of 1989.

In January of 1989, two neighbors informed the plaintiff that a logging company that was timbering the area may have trespassed on her land to cut some trees. She asked Harold Neff, her stepfather, to walk through the area to investigate the timbering. After walking through the area, Mr. Neff told the plaintiff that trees may have been removed from her property. In February of 1989, she contacted a surveyor, Neal Hughes. On February 17, 1989, after surveying the area, Mr. Hughes informed her that trees were removed from her property.

He did not see any painted trees or markers showing the boundary line in the area where the trees were removed. However, Mr. Hughes stated that he "rough marked" portions of the boundary line with survey ribbons and paint for the defendant on the adjacent piece of property.

Sam Boley, a neighbor, testified that he observed the defendant cutting trees on Chuck Wise's property and the plaintiff's property in late January of 1989. He spoke to Mr. Wilson and asked him if D & R Lumber purchased the timber from the Wise and Bullman property and Mr. Wilson stated that it did. Mr. Boley telephoned Mrs. Wise to see if she and her husband had sold their timber to D & R Lumber and Mrs. Wise answered in the affirmative. Mr. Boley did not call the plaintiff, as he assumed she must have sold her timber also. However, a few days later the topic came up in conversation and he told the plaintiff that he believed the defendant removed trees from her property.

Twenty-three trees were cut and removed from the plaintiff's property, logging roads were dug, and the debris from the timbering operation was left on the ground. Photographs of the area were admitted into evidence showing extensive damage to the property. Approximately half of the trees removed were close to the Leonard and Bullman common boundary line and half the trees were taken from well within the plaintiff's property. Six or seven acres of her property were affected, as the defendant removed only the higher quality timber in a practice known as selective cutting. The fair market value of the timber cut was approximately $1,000. The cost of repairing the land was estimated at $1,400.

The plaintiff filed this action on February 13, 1991, seeking compensatory and punitive damages for the removal of her trees and

case with particularity, summarizing the evidence presented to the jury on the subject[.]" This Court went on to find in Syllabus Point 5 that "[a]ssignments of error related to a factor not specifically addressed in the petition will be deemed waived as a matter of state law." We find the defendant waived this issue below. The defendant's petition for appeal and brief fail to set forth the necessary factors outlined in *Garnes*. Furthermore, the defendant does not articulate

why the punitive damage award in this case was unfair. The ratio between the punitive damage award and the compensatory damage award is not unreasonable on its face. "In view of [the defendant's] failure to specify facts that would warrant a finding that the punitive damage award was unreasonable, we decline under Syllabus Point 5 of *Garnes* to set aside the award." *Davis v. Celotex Corp.*, 187 W.Va. at 576, 420 S.E.2d at 567.

destruction of her property. The jury awarded her $3,100 which is the stumpage value of the trees removed multiplied by three, $1,400 for repairing the land, and $500 for loss of property, totalling $5,000. The plaintiff also was awarded $25,000 in punitive damages.

## II.

## DISCUSSION

 The defendant asserts that because the plaintiff elected to seek treble damages as provided by W.Va.Code, 61–3–48a, then punitive damages should not be available to her. The issue raised by the defendant has some merit. Under most legislative schemes, when a statute creates a cause of action and provides the remedy, the remedy is exclusive unless the statute states otherwise. Therefore, multiple damages should not be awarded in the absence of statutory authority. *See* 22 Am.Jur.2d, *Damages* § 813 (1988). Thus, at the heart of this controversy is W.Va.Code, 61–3–48a, and its intended scope and coverage. To resolve this issue, this Court must determine whether the Legislature intended to preclude an award of punitive damages where treble damages are sought.[3]

 In construing this statute, we commence with the rule that courts are not at liberty to construe any statute so as to deny effect to any part of its language. Indeed, it is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. *See Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 381 (1974) ("[w]hen 'interpreting a statute, the court will not look

merely to a particular clause in which general words may be used, but will take in connection with it the whole statute … and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature[.]' " (Citation omitted)). Another rule equally recognized is that every part of a statute must be construed in connection with the whole, so as to make all parts harmonize, if possible, and to give meaning to each. Syl. pt. 1, *Mills v. Van Kirk,* 192 W.Va. 695, 453 S.E.2d 678 (1994); *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990). That is to say, every word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly.[4]

 The defendant contends that the plaintiff should not be allowed to recover both under the statute and common law punitive damages when the two are inconsistent. *See generally Porter v. Wilson,* 244 Va. 366, 421 S.E.2d 440 (1992); *John Mohr & Sons, Inc. v. Jahnke,* 55 Wis.2d 402, 198 N.W.2d 363 (1972). The defendant's argument, to be valid, is premised on the notion that treble damages under the statute are punitive in nature. As stated above, it is necessary for us to examine the statute for the purpose of determining whether its aim is to punish the conduct of the individual to whom it is applied. As a general rule, penal and punitive statutes contain language of the character that indicates they are concerned with *mens rea.* Far from containing expressions of that kind, W.Va.Code, 61–3–48a, repels any inference that it is concerned with *mens rea.*[5]

---

**3.** In *Chesser by Hadley v. Hathaway, supra,* while refusing to resolve the issue, we implicitly recognized that the issue is one of legislative intent. We stated: "[s]ome statutes expressly provide for treble damages in lieu of punitive damages" and "[o]ther statutes give the plaintiff the option of submitting the question of punitive damages to the jury[.]" 190 W.Va. at 599, 439 S.E.2d at 464.

**4.** We find this statute to be remedial in nature and, as a remedial statute, it should be liberally construed to effect the purpose of the Legislature. *See State ex rel. McGraw v. Scott Runyan*

*Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

**5.** It is to be noted that W.Va.Code, 61–3–48a, "employs no term such as 'wilful' or 'intentional' which [is] found in statutes which impose penalties." *Kinzua Lumber Co. v. Daggett,* 203 Or. 585, 590, 281 P.2d 221, 223 (1955). Far from employing words that evince a purpose to deal with wanton conduct and punish it, this statute plainly indicates a legislative design for its application in cases where the wrongdoer had no evil purpose. In fact, this treble damage provision is triggered in cases where the wrongdoer actually acted in good faith.

Recovery is permitted under this statute for the mere removal or cutting of someone's trees without their written consent. In any event, the literal terms of the statute are ultimately indifferent to conduct that is willful or results from the wrongdoer's careless inattention to boundary lines. By its very language, W.Va.Code, 61–3–48a, deals with trespassers who have no evil intent. The statute is concerned with the cutting, damaging, and taking of trees, not with the state of mind of the wrongdoer.[6]

■ Furthermore, a treble damage award and a punitive damage award serve two distinct purposes. The treble damage award available under W.Va.Code, 61–3–48a, is to provide compensatory damages to landowners for damaged or removed trees, logs, fruit, etc. By allowing such increase of recovery from the market value of the timber removed, the Legislature provided a remedy that would more adequately compensate landowners. In adopting this legislation, the Legislature must have recognized that many times it would not be cost effective to bring a claim for damaged or removed trees or fruit when considering the market value of the item compared with the cost of litigation. In other words, the Legislature may have been persuaded to make provision for the recovery of the enhanced amount by a belief that if a victim is granted judgment for nothing more than her actual damages, she would have nothing left for herself after she paid attorney's fees.[7] Thus, the statute gives the victim an incentive, through treble damages, to assert her rights and provides her with the means of doing so.

This point cannot be rejected lightly. Under common law, a recovery for the wrongful cutting of trees was either the difference between the market value of the land immediately before and immediately after the trespass or the fair market value of the trees.

18 Michie's Jurisprudence, *Trees and Timber* § 20 (1985). In either case, it is not difficult to understand why a legislative body might conclude the victim was not made whole. At common law, the wrongdoer was not liable for all the harmful consequences of his actions, but only for those that were proximately caused by the wrong. Obviously, there is a big difference between the proximate result and what a victim would receive given the benefit of a harmful consequences rule. The legislative effort to permit full recovery is not, in our judgment, a punishment to the wrongdoer but rather a desire to provide full compensation to the plaintiff from the wrongdoer for the damages sustained because of the wrongful act. To recover treble damages, a plaintiff need not make a showing that the removal of the trees was in willful disregard of the landowner's property rights. The statute does not directly or indirectly speak to punishment or penalties, but refers entirely to damages suffered by the plaintiff. Thus, we find the overriding purpose of the treble damage provision is to award the victim adequate compensation. Its amerciable effect, if any, is secondary.

■ On the other hand, a punitive damage award, or smart money, is given to punish a defendant, to deter others from similar conduct, and to provide additional compensation to the plaintiff. *See Davis v. Celotex Corp.*, 187 W.Va. 566, 420 S.E.2d 557 (1992); *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981); *Ennis v. Brawley*, 129 W.Va. 621, 41 S.E.2d 680 (1946). Punitive damages are sums of money that are awarded in addition to actual damages. Punitive damages are assessed against wrongdoers because the law disapproves of the conduct in which the wrongdoer is engaged and seeks to stamp it out. Cases in which punitive damages are sought have a

---

6. We do not mean to suggest that merely because the statute does not require proof of willful or intentional conduct that the absence of these words alone permits punitive damages. If we found that an award of treble damages was intended to be exclusive, we would bar punitive damages on the ground of double recovery even though the treble damage suit did not require willfulness or maliciousness as an element of the cause of action.

7. Every time a victim institutes an action for recovery of damages, she is subjected to inconvenience, annoyances, preparation for the trial, loss of time, and the payment of attorney's fees. However, the preparation for trial, loss of time, and payment of attorney's fees are usually recoverable in the damage award.

two-fold aspect: (a) recovery of redress for an injury suffered by the victim[8]; and (b) the amercement of the wrongdoer. Obviously, it is the amercement of the wrongdoer that is the focal point of punitive damages. We believe the Legislature in enacting W.Va. Code, 61–3–48a, accepted as a base for the treble damage award the victim's actual damages and then by tripling the sum granted her a recovery so that she would have something left in her pocket after she had discharged the expenses of the litigation. As we suggested already, this award has nothing to do with punishing the wrongdoer.

■ There is another flaw in the defendant's reasoning. The recovery of treble damages under W.Va.Code, 61–3–48a, is for damage to things cut, damaged, or carried away. The things covered by statute are "timber, trees, logs, posts, fruit, nuts, growing plant or product of any growing plant." It does not cover any other damages resulting from a trespass. In the instant action, the plaintiff also sought recovery for the defendant's trespass for entering her property and destroying her land. The jury awarded the plaintiff $1,400 for repair to her land as a separate item of actual damages. The punitive damages may have been awarded solely or in part for wanton and willful conduct that resulted in the damage to her land. If this is so, there is no issue of double recovery at all.

■ Finally, the defendant's argument, we think, fails in the face of the statutory language itself.[9] W.Va.Code, 61–3–48a, specifically states that the treble damage award "shall be in addition to and notwithstanding any other penalties by law provided." Applying the clear language of the statute, we find that a plaintiff does not foreclose his or her claim for punitive damages by seeking recovery under W.Va.Code, 61–3–48a. If the Legislature intended for treble damages to be the exclusive remedy, it would have not added such explicit language. Just as courts are not to add to statutes something the Legislature has purposely omitted, we are also obliged not to eliminate through judicial interpretation words that were purposely included. *See Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994).

## III.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the Circuit Court of Pleasants County.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, Justice, did not participate.

---

8. Lack of compensable damages normally operates as a bar to the recovery of punitive damages. *LaPlaca v. Odeh,* 189 W.Va. 99, 428 S.E.2d 322 (1993); *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

9. It has been emphasized repeatedly that " '[t]he starting point in every case involving construc-

tion of a statute is the language itself.' " *Gustafson v. Alloyd Co., Inc.,* — U.S. —, —, 115 S.Ct. 1061, 1074, 131 L.Ed.2d 1, 21 (1995) (Thomas, J., dissenting), *quoting Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692, 697 (1985). In this case, we need go no further than the four corners of the statute to resolve the issue raised by the defendant.