# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.P.**

**No. 19-0472** (Jackson County 09-JA-11 and 13-CIGR-9)

**FILED**
**November 6, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.P., by counsel Rosalee Juba-Plumley, appeals the order entered by the Circuit Court of Jackson County on April 1, 2019, terminating her parental rights to J.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans and Benjamin E. Fischer, filed a response in support of the circuit court's order. The guardian ad litem, Ryan M. Ruth, filed a summary response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

After considering the parties' briefs, oral arguments, appendix record, and applicable law, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In order to fully understand this case, we must begin in 2009 when the DHHR filed an abuse and neglect petition in the circuit court against petitioner and the father of J.P. alleging that they had abused and neglected J.P. (the "2009 abuse and neglect case"). During the course of that proceeding, the circuit court adjudicated petitioner as abusive and neglectful and granted her a post-adjudicatory improvement period. By order entered on or about October 8, 2010, the circuit court found that petitioner had successfully completed her improvement period and awarded her custody of J.P.[2]

Meanwhile, R.N., met petitioner and J.P. at a business in which she was employed, and R.N. began providing care to J.P. On November 1, 2013, R.N. filed a petition for guardianship of J.P. in the Jackson County Family Court. Because it found a likelihood that it would be asked to

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Following evidentiary hearings on this matter, on February 16, 2012, the Circuit Court of Jackson County entered an order placing J.P. in the primary care of petitioner and ordering certain visitation with his father.

1

consider allegations of abuse and/or neglect, the family court transferred the matter to circuit court. The family court also named R.N. as J.P.'s temporary guardian.

The circuit court reopened the 2009 abuse and neglect case and consolidated it with the guardianship case for further proceedings. The circuit court held hearings on R.N.'s petition for guardianship during April and May of 2014.[3] By order entered on July 31, 2014, the circuit court found that petitioner had physically, emotionally, and mentally abused J.P. and neglected him academically. R.N. was appointed J.P.'s permanent guardian at that time, and petitioner was granted limited supervised visitation with J.P. Petitioner appealed this ruling and this Court affirmed. *In re: J.P.*, No. 14-0829, 2015 WL 2381310 (W. Va. May 18, 2015) (memorandum decision).

In 2015, R.N., filed a motion to discontinue visitation between petitioner and J.P. After holding two evidentiary hearings, the circuit court entered an order terminating such visitation. Thereafter, petitioner's mother (J.P.'s maternal grandmother), G.P., filed a motion to intervene and a motion to modify the permanent guardianship. G.P. was granted intervenor status, but her request to modify the permanent guardianship was denied. However, she was awarded supervised visitation once every ninety days. R.N., appealed the circuit court's decision to grant supervised visitation to G.P., and G.P. appealed the denial of her motion to modify the guardianship. These appeals resulted in this Court's second review of the proceedings involving J.P. In 2017, this Court affirmed the decisions of the circuit court in *In re: J.P.*, Nos. 16-0364 & 16-0654, 2017 WL 75943 (W. Va. January 9, 2017) (memorandum decision).[4]

Approximately eight months later, on September 25, 2017, R.N., filed a new petition in the circuit court to adopt J.P. R.N. alleged abandonment and requested the circuit court terminate the biological parents' parental rights and grant the adoption. The circuit court dismissed the Petition for Adoption due to lack of jurisdiction. Specifically, the circuit court held that the July 31, 2014 order that appointed R.N. as the permanent legal guardian for J.P. was a "dispositional order" and that pursuant to West Virginia Code § 49-4-606, such an order is modified by means of a motion in the abuse and neglect proceeding, not by filing a petition for adoption.

Following the circuit court's dismissal of her Petition for Adoption, on November 29, 2017, R.N. filed a petition to modify the disposition in Case 09-JA-11 seeking to terminate the parents' parental rights to J.P. By order dated December 14, 2017, the circuit court directed the DHHR to investigate the allegations in the petition and to submit a written investigation report. On February 1, 2018, the DHHR submitted a "Court Ordered Summary," which noted that there were no pending allegations of abuse and neglect as J.P. had not lived with his mother since November of 2013. The DHHR went on to explain that "all prior allegations, the last being from 2015, were previously addressed by the court" and, therefore a traditional DHHR investigation could not be conducted. As such, the DHHR did not file a new or amended abuse and neglect petition. However, the DHHR recommended that petitioner not receive an improvement period as there

---

[3] The circuit court held hearings on April 4, 2014, May 19, 2014 and May 27, 2014.

[4] According to the circuit court, petitioner has not had any contact with J.P. since April 2, 2015.

were no services that would improve her parenting skills. The DHHR recommended that J.P. be made legally free for adoption by R.N. by consent from the parents, relinquishment or termination of the parents' parental rights.

In April of 2018, petitioner moved to dismiss the petition to terminate her parental rights "as not permitted by either the abuse and neglect statute, Chapter 49, the [g]uardianship statute in Chapter 44, or the [a]doption statute in Chapter 48." The circuit court denied the motion to dismiss concluding that "relevant case law supports the premise that termination of parental rights is permitted via modification, without the filing of a new petition alleging abuse and neglect."

Petitioner underwent a court-ordered parental fitness evaluation and a forensic psychological evaluation. At a subsequent hearing, Dr. Saar testified that petitioner suffers from schizoaffective disorder, with a related history of suicidal ideation and gestures. In his report, Dr. Saar noted that there are "currently no services or interventions that could reasonably be expected to improve [petitioner's] parenting time within a reasonable period of time and no expectation that she would comply with the directive of the Court should she be granted access to the child through visitation." J.P. submitted to an *in camera* interview with the court on September 20, 2018, and he expressed his preference not to see petitioner or G.P., and his desire to be adopted by his guardian, R.N.[5]

By order entered April 1, 2019, the circuit court found that petitioner's "negative prognosis for parenting, since the time when she successfully completed an improvement period" constituted a material change in circumstances since the time of disposition. It further found that J.P. had thrived in the five years since he was placed with his guardian, R.N. The circuit court concluded that it had the authority to terminate parental rights as a modification of disposition, as sought by the guardian, without the filing of a new abuse and neglect petition. In addition, the circuit court concluded that the conditions of abuse exhibited by petitioner could not be corrected, her inability to participate in services, and her inability and/or unwillingness to correct the conditions which led to the findings of abuse and neglect necessitated a finding that there was no reasonable likelihood that the conditions of abuse could be substantially corrected in the near future. As a result, petitioner's parental and custodial rights were terminated as to J.P. by order entered April 1, 2019.[6]

Thereafter, in November of 2019, J.P.'s guardian, R.N., contacted the DHHR and requested that J.P. be removed from her home. She further indicated that she no longer desired to adopt him. She then filed a motion to terminate her guardianship, and by order entered on February 3, 2020, the circuit court terminated the guardianship.[7]

---

[5] The parental rights of J.P.'s father were terminated by Disposition Order entered on September 25, 2018.

[6] Petitioner's mother, G.P., also intervened in this proceeding and the circuit court made certain findings and rulings with respect to her visitation rights. G.P. did not appeal this order.

[7] This Court entered an order dismissing R.N. as a party to the instant case.

Petitioner appeals the April 1, 2019 order terminating her parental rights.

The standard of review in cases of abuse and neglect is as follows:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is not clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in terminating her parental rights; she contends that West Virginia Code § 49-4-606 cannot be used to reverse a dispositional order without the filing of a new or amended abuse and neglect petition. We disagree. This statute expressly provides a process for certain individuals to petition a court to modify a dispositional order, and it does not require the filing of a new or amended abuse and neglect petition.

West Virginia Code § 49-4-606(a) provides:

> Upon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four [49-4-604] of this article and *may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.* A dispositional order may not be modified after the child has been adopted, except as provided in subsections (b) and (c) of this section. Adequate and timely notice of any motion for modification shall be given to the child's counsel, counsel for the child's parent or custodian, the department and any person entitled to notice and the right to be heard. The circuit court of origin has exclusive jurisdiction over placement of the child, and the placement may not be disrupted or delayed by any administrative process of the department.

4

(Emphasis added).[8]  In the instant case, there appears to be no dispute that R.N. (J.P.'s permanent guardian at the time the petition was filed) was a proper person to file such a petition.  At the time R.N. filed the petition, she had been J.P.'s guardian for approximately four years.  R.N. filed the petition so that she could adopt J.P.

As part of the process delineated in West Virginia Code § 49-4-606, the court conducted multiple hearings.  Evidence was taken on September 2, 2018, September 20, 2018 (*in camera* testimony of J.P.), October 24, 2018 and December 19, 2018.

After holding multiple hearings, the circuit court found that petitioner's negative prognosis for improved parenting constituted a material change in circumstances.  The circuit court further concluded that modification was in J.P.'s best interests.  These findings are consistent with the evidence and the requirements of West Virginia Code § 49-4-606 that must be met before a dispositional order may be modified.

Petitioner urges this Court to hold that West Virginia Code § 49-4-606 cannot be used to terminate the parental rights of a parent whose full legal and physical rights have been returned without the filing of a new or amended petition.[9]  We find no merit to this argument.  As noted above, the statute does not require the filing of a new or amended petition.  West Virginia Code § 49-4-606 permits a court to modify a dispositional order, provides a process for such modification, and contains one limitation.  The statute provides that a dispositional order may not be modified after the child has been adopted as provided in West Virginia Code §§ 49-4-606(b) and (c).  In the instant case, the worsening of petitioner's condition was the change in circumstances that justified the modification.

Petitioner challenges the circuit court's modification of the prior dispositional order.  However, a clear reading of West Virginia Code § 49-4-606(b) establishes that such modification,

---

[8] *See also* Rule 46 of the W. Va. R. Child Abuse and Neglect, which provides, in relevant part, ("A child, a child's parent (whose parental rights have not been terminated), a child's custodian or the Department shall file a motion in the circuit court of original jurisdiction in order to modify or supplement an order of the court at any time; provided, that a dispositional order pursuant to W. Va. Code § 49-4-604(b)(6) shall not be modified after the child has been adopted, pursuant to W. Va. Code § 49-4-606.  The court shall conduct a hearing and, upon a showing of a material change of circumstances, may modify or supplement the order if, by clear and convincing evidence, it is in the best interest of the child.  Provided: an order of child support may be modified if, by the preponderance of the evidence, there is a substantial change in circumstances, pursuant to W. Va. Code § 48-11-105.  Adequate and timely notice of any motion for modification shall be given to the child's counsel, counsel for the child's parent(s) (whose parental rights have not been terminated) or custodian, and to the Department, as well as to other persons entitled to notice and the right to be heard.")

[9] Petitioner seeks to have this Court clarify our holding in *In re M.E. and M.H.*, No. 16-0006, 2016 WL 3463474 (W. Va. June 21, 2016) (memorandum decision).  Since we find that the applicable statute permits the modification in this case, we need not address the case referenced by petitioner.

while perhaps unusual in light of the passage of time since the disposition in this matter, is nonetheless entirely appropriate pursuant to the express language of the statute. "It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (citing *Bullman v. D & R Lumber Company*, 195 W.Va. 129, 464 S.E.2d 771 (1995). Moreover, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advocate Div. v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989). *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 671, 815 S.E.2d 474, 482 (2018).

Petitioner also argues that the circuit court erroneously found that her mental health issues had worsened to the point that it constituted a material change of circumstances that warranted a modification of the dispositional order. Specifically, petitioner argues that findings regarding her poor prognosis and that her parenting could not improve had been "known" for years. We are not persuaded by this argument. Sadly, the evidence demonstrated that petitioner's mental health had deteriorated in the years following the disposition resulting in her involuntary commitments and homelessness. Petitioner was the subject of mental hygiene proceedings in September and October of 2017. Dr. Saar described the worsening of her condition as follows: "[W]hile [petitioner] reported having been compliant with medication for eleven (11) years, nonetheless just a few months ago, in October 2017, she was hospitalized for mental illness that featured suicidal and homicidal ideations. This increase in symptomology reflects an overall worsening of her symptoms and a significant period of decompensation." Given the evidence presented, the circuit court did not err in finding that petitioner's mental health issues had worsened and that such worsening resulted in a material change in circumstances.

Having fully considered the issues before us, we remind the circuit court of its duty to conduct permanency reviews until the child has a permanent placement.[10] As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6.

Finally, we remind the GAL that his role in this abuse and neglect proceeding will not cease until the child is in his permanent placement. Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

---

[10] *See* Rule 39(b) ("At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.")

For the foregoing reasons, we affirm the circuit court's April 1, 2019 order terminating petitioner's parental rights to J.P.

Affirmed.

**ISSUED:** November 6, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
The Honorable Andrew G. Dimlich sitting by temporary assignment

**DISQUALIFIED:**
Justice John A. Hutchison