23-683 – *West Virginia Automobile and Truck Dealers' Association, Thornhill Auto Group, Inc., Moses Ford, Inc., and Astorg Ford of Parkersburg, Inc. v. Ford Motor Company*

**FILED**

**March 11, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Walker, Justice, dissenting, and joined by Justice Armstead:

In this certified question proceeding, the United States District Court for the Southern District of West Virginia seeks our guidance as to West Virginia Code §§ 17A-6A-1 through -17 – a state statute governing the relationship between motor vehicle manufacturers and the dealers who sell new motor vehicles. We consider the meaning of the phrase "required and approved" in West Virginia Code § 17A-6A-10(1)(i), which prohibits a manufacturer from forcing a dealer to install "new signs or other franchisor image elements" that replace or substantially alter franchisor image elements completed within the preceding ten years that were "required and approved" by the manufacturer. In holding that a dealer's image upgrades completed in accordance with the requirements of an *optional* program constitute installation of franchise image elements "required and approved" by the manufacturer under § 17A-6A-10(1)(i), the majority decision runs roughshod over the plain language of the statute. So, I respectfully dissent.

It is undisputed that the dealers in this case each voluntarily renovated their dealerships to meet Trustmark 3 standards under Ford's 2013 Facility Assistance Program. As the majority explains, the dealers were *not* required to participate in the Facility Assistance Program or build Trustmark 3 facilities, which were dual-branded Ford and Lincoln. But dealers deemed in compliance with that program received a payout of matching funds up to $750,000 to help finance the renovations.

Then in 2020, Ford launched Phase II of the Lincoln Commitment Program, another voluntary program, which established an incentive of up to 2.75% MSRP per vehicle sold for dealers whose physical facilities complied with certain standards including exclusive Lincoln branding. Because the Trustmark 3 facilities of the dealers in this case did not comply with these new Lincoln Commitment Program standards, the dealers did not receive the 2.75% MSRP per vehicle incentive payment, but rather a reduced incentive payment of 1% MSRP through 2022 and then no incentive payment at all as of January 1, 2023.

As summarized above, West Virginia Code § 17A-6A-10(1)(i), provides that Ford, as a manufacturer, may not "coerce or require any dealer, whether by agreement, program, incentive provision or otherwise, to . . . install new signs or other franchisor image elements that replace or substantially alter those . . . franchisor image elements completed within the proceeding ten years that were required and approved by

1

the manufacturer[.] . . ."[1]  If the manufacturer "offers incentives or other payments to a . . . dealer paid on individual vehicle sales under a program . . . premised, wholly or in part, on . . . installation of franchisor image elements required and approved by the manufacturer, . . . and completed within the ten years preceding the program" the dealer "shall be deemed to be in compliance with the program requirements pertaining to . . . installation of signs or other image elements that would replace or substantially alter those previously constructed or installed within that ten year period."[2]

The majority contends that in enacting § 17A-6A-10(1)(i), the Legislature specifically recognized that programs and incentive provisions are one way in which manufacturers can exercise undue control over dealerships.  While the statute lists incentive provisions as one such mechanism that manufacturers can employ to coerce or require dealerships to install "*new* signs or other franchisor elements,"[3]  it does not follow that previously constructed image elements made in accordance with optional, voluntary incentive programs constitute installation of franchisor image elements "required and approved" by the manufacturer.  Nor does it follow that, by participating in the optional Facility Assistance Program, "the dealers installed franchisor image elements that were undeniably required and approved by Ford."

The preliminary consideration that ought to have driven the majority decision is § 17A-6A-10(1)(i)'s language: "[i]t has been emphasized repeatedly that '[t]he starting point in every case involving construction of a statute is the language itself.'"[4]  The majority's tortured analysis does not withstand the plain language of § 17A-6A-10(1)(i).  Section 17A-6A-10(1)(i)'s statutory grandfather clause is plainly limited in application to "installation of franchiser image elements *required and approved* by the manufacturer."[5]  Voluntary improvements—such as the Trustmark 3 improvements made under the Facility Assistance Program—by definition simply cannot be considered *required* by the manufacturer when compliance with such programs is optional.

---

[1] W. Va. Code § 17A-6A-10(1)(i) (2015).

[2] *Id.*

[3] *Id.* (emphasis added).

[4] *Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 135 n.9, 464 S.E.2d 771, 777 n.9 (1995) (internal citations omitted).

[5] W. Va. Code § 17A-6A-10(1)(i) (emphasis added).

2

Instead, to define the term "required" as used in the statute's grandfather provision, effect must be given to its common, ordinary, and accepted meaning.[6] Meriam Webster's Dictionary defines required as "stipulated as necessary to be done."[7] Black's Law Dictionary defines a requirement as "something that must be done because of a law or rule."[8] Clearly the common, ordinary, and accepted meaning of the term "required" as used in the statute leaves no room for the choice given to the dealers to participate in the Facility Assistance Program.

"Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."[9] Here, we must take the Legislature at its word that the statutory grandfather provision found in § 17A-6A-10(1)(i) extends only to those previously constructed facility improvements and franchisor image elements that were required and approved by Ford. By reading optional programs into that protection, the majority's decision far oversteps the boundaries of this Court's province.[10]

The majority's attempt to impute the language found earlier in § 17A-6A-10(1)(i)—identifying "agreement[s], program[s], incentive provision[s] or otherwise[,]" as various mechanisms that a manufacturer may use to "coerce *or* require" a dealer to install "new signs or other franchisor elements"[11]—to support its strained interpretation of § 17A-6A-10(1)(i) is similarly inapposite to the statute's plain language. The first sentence of § 17A-6A-10(1)(i) simply provides an introductory principle that a manufacturer may not coerce *or* require a dealer to construct new image elements.

---

[6] *See* Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin,* 175 W. Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning.").

[7] *Required*, Merriam-Webster, https://www.merriam-webster.com/dictionary/require (last visited February 26, 2025).

[8] *Requirement*, Black's Law Dictionary (12th ed. 2024).

[9] Syl. Pt. 2, Crockett v. Andrews, 153 W. Va. 714, 172 S.E.2d 384 (1970).

[10] *See* Syl. Pt. 11, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013) ("It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted.")

[11] W. Va. Code § 17A-6A-10(1)(i) (emphasis added).

"Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."[12]  At best, a manufacturer's implementation of voluntary "agreement[s], program[s], incentive program[s], or otherwise[,]"[13] constitutes *coercion* under this provision.  More to the point, that the first section of West Virginia Code § 17A-6A-10(1)(i) uses coercion language later omitted from § 17A-6A-10(1)(i)'s grandfather clause only fortifies the conclusion that the Legislature intended to exclude voluntary programs and other incentive provisions from the ambit of the statute's protection.

The majority decision takes a broad brush to § 17A-6A-10(1)(i) to hold that a dealer's image upgrades completed in accordance with the requirements of an *optional* program constitute installation of franchise image elements "required and approved" by the manufacturer—an interpretation that is simply incompatible with the provision's plain language.  Unlike the majority, I see little sense in adopting an interpretation of §17-6A-10(1)(i) that disregard's the Legislature's clear intent, as expressed through the statute's unambiguous language.  With respect to my colleagues in the majority, I dissent.

I am authorized to state that Justice Armstead joins in this dissent.

---

[12] *Carper v. Kanawha Banking & Trust Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974).

[13] W. Va. Code § 17A-6A-10(1)(i).