FARMERS & MERCHANTS BANK OF KEYSER, W. VA., *a corp.*
AS EXECUTOR, *etc.*

*v.*

CHARLES H. HADEN, II, *Successor* TO G. THOMAS BATTLE, AS
*State Tax Commissioner* OF W. VA.

(No. 12877)

Submitted May 19, 1970.          Decided June 23, 1970.

*Chauncey H. Browning, Jr.,* Attorney General, *Paul R. Goode, Jr.,* Deputy Attorney General, *Louise M. Barr,* Assistant Attorney General, for appellant.

*Rogers & Hott, Donald C. Hott,* for appellee.

BROWNING, PRESIDENT:

This is an appeal from a final order of the Circuit Court of Mineral County entered on January 14, 1969, in an appeal by the Farmers & Merchants Bank of Keyser, West Virginia, a corporation, as executor of the estate of Otie L. Kimmell, appellee herein, from an administrative decision of G. Thomas Battle, Tax Commissioner of the State of West Virginia, predecessor to Charles H. Haden, II, appellant herein. In that final order that court set aside a deficiency assessment of Inheritance and Transfer Tax made by appellant against appellee, and exonerated the estate from liability on account of the assessment. This Court granted the appeal and supersedeas on September 29, 1969, and the case was submitted for decision upon oral argument and briefs on May 19, 1970.

Decedent, Otie L. Kimmell, died on October 23, 1966, leaving an estate valued at $144,702.62. Included in the estate were stocks valued at $121,484.75 which she had acquired from the estate of her deceased husband, Edward C. Kimmell, who died on August 16, 1962. At that time his executor paid Inheritance Tax on the stock after deducting the statutory exemption of $15,000.00 allowed a surviving widow. Upon Otie L. Kimmell's death, appellee excluded $106,484.75 from her taxable estate alleging that such deduction was authorized under Code, 11-11-5, as amended, which, in pertinent part, reads:

> For the purpose of the tax there shall be deducted from the market value of the property transferred the value at which it was assessed for any inheritance or transfer tax paid to the State of West Virginia upon a transfer to the decedent at any time within three years prior to the death of the decedent.

On the tax return, appellee set forth the stock and noted "transfer dates" as follows:

| Transfer date | Item Transferred | Value |
|---|---|---|
| April 15, 1965 | 200 Shares, General Motors Stock | $10,512.50 |
| April 23, 1965 | 150 Shares, Armco Steel Stock | 7,303.13 |

| April 15, 1965 | 75 Shares, Farmers and Merchants Bank Stock | 8,250.00 |
| March 20, 1964 | 774 Shares, American Telephone and Telegraph Company Stock | 86,833.12 |
| October 6, 1965 | 212 Shares, National Gypsum Stock | 8,586.00 |
| | | $121,484.75 |
| | Less Exemption | 15,000.00 |
| | | $106,484.75 |

Appellee contended below that these transfer dates started the running of the three-year period mentioned in the heretofore quoted portion of Code, 11-11-5, as amended. These dates were those upon which appellee had released the stock certificates for "transfer" to Otie L. Kimmell, all dates being within three years of her death. The appellant disallowed the deduction for the reason that Otie L. Kimmell died more than three years following the death of her husband, Edward, and that the "transfer" actually took place at the time of the death of Edward not on the dates set forth above. This being so, Otie's beneficiaries were not entitled to the deduction.

In its opinion rendered in open court, the circuit court held "that the word 'transfer' is the date there has been delivery of the property to the beneficiary . . . ," and, as heretofore stated, set aside the assessment.

Appellant assigns the following errors:

1. The Court erred in construing and interpreting Chapter 11, Article 11, Section 5, Code of West Virginia, 1931, as amended, rather than merely reading and applying the same, after the Court determined said section to be clear and unambiguous, inasmuch as by considering Article 11 in its entirety the event of "transfer" as used in said Section 5 becomes consonant with the event of death; thus the legislature has pinpointed the death of the prior decedent and the death of the present decedent as providing the two terminal dates for determination of the three year period of limitation.

2. The Court erred in ruling that the "transfer" date provided in Chapter 11, Article 11, Section 5, Code of West Virginia, 1931, as amended, means the date there has been delivery of the property to the beneficiary, said section containing no language relating to "delivery" of property, as pinpointing the transfer date, but instead specifically providing that the transfer date is governed by the date of death of the prior decedent; thus permitting fixed ascertainable dates of death to determine the three year period of limitation.

3. The Court erred in determining that delivery of the property to the beneficiary was the first of the terminal dates for defining the three year period of limitation preceding the death of the present decedent, without making a further finding to designate upon what date, or dates, there was delivery of some, or all, of the property (stocks) to the beneficiary and present decedent; but nevertheless holding that delivery was within the statutory three year period of limitation.

4. The Court erred in entering its order on the 14th day of January, 1969, setting aside the deficiency tax assessment of the Respondent below, State Tax Commissioner, thus allowing a deduction for previously taxed property, and exonerating the estate of Otie L. Kimmell from the assessed deficiency; and further erred in failing to affirm the deficiency assessment of the State Tax Commissioner dated December 28, 1967.

This case is unique in that the trial court, the appellant and the appellee maintain that the statute in question is clear and unambiguous. Of course, the latter two do not agree as to the meaning of the language therein and the intent of the legislature in the use of that language. This Court also believes that the statute is clear and unambiguous.

This is the first point of the syllabus of *State ex rel. Miles Hughes v. Bd. of Educ. of the County of Kanawha, et al.,* and *State ex rel. William T. McLaughlin, II v. Bd. of Educ. of the County of Marion, et al.,* 154 W.Va. 107, 174 S.E.2d 711, taken from the syllabus of *Dunlap v. State Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448: "Where the

language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein." The title of the statute that is in question in this case is "Inheritance and Transfer Taxes" and is Article 11 of Chapter 11 of the Code of West Virginia, as amended. Section 1 of that Article provides, insofar as pertinent, that:

> A tax, payable into the treasury of the State, shall be imposed upon the transfer, in trust, or otherwise, *of any property,* or interest therein, real, personal, or mixed, if such transfer be: (a) By will or by laws of this State regulating descent and distribution from any person who is a resident of the State *at the time of his death* and who shall die seized or possessed of property; (b) by will or by laws regulating descent and distribution of property within the State, or within its taxing jurisdiction, and the decedent was a nonresident of the State *at the time of his death* . . . . (Emphasis added.)

This is the first sentence of the second paragraph of Section 5 of that Article:

> For the purpose of the tax there shall be deducted from the market value of the property transferred the value at which it was assessed for any inheritance or transfer tax paid to the State of West Virginia upon a transfer to the decedent at any time *within three years prior to the death of the decedent.* (Emphasis added.)

Section 9 provides that all taxes "upon any transfer" shall be a lien upon the property "transferred," superior to any lien created after such "transfer," and that section further provides that "no title shall vest or be transferred as to any such property, except subject to the lien for such taxes . . . ." Section 11, in clear and unambiguous language, provides that "[a]ll taxes *imposed by this article* shall be due and payable *at the death* of the transferor . . . ." (Emphasis added.)

In *Gaylord v. Hope Natural Gas Co.,* 122 W.Va. 205, 8 S.E.2d 189, this Court said:

Our statutes of descent and distribution seem to contemplate the passing of title at the death of an ancestor. Code, 42-1-1, and 42-2-1. Undoubtedly, the title to real estate vests in the heir at the death of the ancestor, and, subject to indebtedness, *the personal estate as well.* (Emphasis added.)

Furthermore, in *Kennedy v. Kennedy,* 97 W.Va. 491, 125 S.E. 337, this Court said:

We cannot see that the wife's non possession of her distributive share affects her beneficial right thereto. The statute gives it to her as effectively as if her husband had willed it to her. In either case it would be subject to the lawful charges against the husband's estate in the hands of the executor or administrator. Lack of possession would not prevent the vesting of the distributive share in her. While it is true the legal title passes to the administrator with the right of possession for the purpose of paying debts against the estate, charges of administration and the like, the beneficial interest is vested in her, and the possession of the administrator is her possession. His relation to her is that of a fiduciary, or trustee. * * * The beneficial interest in the distributive share vests in her at the death of her husband, and having become vested she cannot become divested except by some act of her own.

In light of all this, it is the view of this Court that the legislature intended that property "transfers" upon the death of a decedent, and, this being so, the property in the instant case was transferred to Otie Kimmell more than three years prior to her death, thus excluding it from the statutory deduction claimed by appellee. The legislative intent plainly expressed in Article 11 provides that the three-year period shall begin to run as of the date of death rather than the actual physical delivery of the property at some subsequent date after the estate is settled. It should be noted at this point that we feel that the word "transfer" or some synonymous term had to be used by the legislature since this article not only covers transfers resulting from death, but also *inter vivos* transfers made in contemplation of death. Also, it is the view of this Court that the contention of the appellee that a distinction may be made in the language used in Article 11

between real property and personal property is not valid insofar as it affects the issue to be determined in this case.

A pleading not heretofore mentioned is a motion, filed by appellee, to dismiss this appeal and supersedeas as being improvidently awarded for the reason that the appellant had "not incorporated into the Record the evidence taken in the hearing of this case by the Trial Court, in any manner provided by law for making of such evidence a part of the Record." We find no merit in this contention in view of the fact that in three separate orders, the circuit court stated that the "proceedings had were taken by the Court Reporter, and are ordered transcribed and filed herein, and are made a part of the Record in this case." Appellee's motion is denied.

The judgment of the Circuit Court of Mineral County is reversed and the case is remanded for such further proceedings as are consistent with the views expressed in this opinion.

*Reversed and remanded.*