439 S.E.2d 459

**Lucille C. CHESSER by Peggy C. HAD-LEY, Her Attorney–In–Fact, and Byron Zirkle, Plaintiffs Below, Appellants,**

v.

**Timothy HATHAWAY and Kingsville Wood Products, Inc., A Corporation, Defendants Below, Appellees.**

**No. 21609.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Dec. 16, 1993.

James C. West, Jr., West & Jones, Clarksburg, for appellants.

James A. McKowen, Hunt, Lees, Farrell & Kessler, Charleston, for appellees.

PER CURIAM:

This case is before this Court upon an appeal from the September 23, 1992, order of the Circuit Court of Barbour County, West Virginia. In that order the circuit court denied the appellants' motion to set aside the verdict and judgment entered thereon. The appellants are Lucille C. Chesser by Peggy C. Hadley, her attorney-in-fact and Byron Zirkle. The jury awarded the appellants $19,009.96 in damages that resulted from the appellees' negligent trespass onto the appellants' property and the subsequent damaging, destroying and cutting of timber upon the appellants' land. The appellees are Timothy Hathaway and Kingsville Wood Products, Inc., a corporation. We have before us the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is affirmed, in part, reversed, in part, and remanded.

I

The land involved in this timber trespass action is known as the W.T. George property, which consists of 397 acres. The property is located in Barbour County, West Virginia. The W.T. George property involves three adjoining tracts of land, the Dayton tract, the Sipe tract and the Gall tract. The Dayton and Sipe tracts are owned by the W.T. George heirs (hereinafter "the heirs") and John Mosesso. With respect to the Gall tract, one-fourth of it is owned by the heirs;

and, the remaining three-fourths is owned by the plaintiffs below and the appellants herein, with Lucille Chesser owning one-half interest and Byron Zirkle owning one-quarter interest.

In the spring of 1990, the defendants below and the appellees herein entered into negotiations about timbering the W.T. George property. Mary Kelley, agent for the appellants, conducted the negotiations with the appellee, Timothy Hathaway. According to Ms. Kelley, she told Mr. Hathaway that the heirs were only interested in selling timber rights on the Dayton and Sipe tracts because the heirs only owned one-fourth interest in the Gall tract.

Prior to timbering, Mr. Hathaway went to the assessor's office to look at the relevant tax maps and cards. Mr. Hathaway testified that according to this information, it appeared as though the Dayton, Sipe and Gall tracts were not separate tracts but rather one tract of land. Following his completion of this research, Gerald Fogg, who initially represented the heirs, gave Mr. Hathaway a list of all the heirs. Mr. Hathaway testified that at this time Mr. Fogg did not indicate that anyone, besides the heirs, had an interest in the W.T. George property. Furthermore, Mr. Hathaway testified that in May of 1990, he signed separate timber agreements with each of the heirs and there was nothing within these contracts that indicated that someone other than the heirs owned an interest in the property.

John Kefover, one of the heirs, and Joan Brown, Mr. Kefover's friend, met with Mr. Hathaway and Mr. Fogg. John Kefover and Joan Brown had lived on the W.T. George property for 20 years. Mr. Hathaway testified that prior to the commencement of the timbering, he walked the area to be timbered with Mr. Kefover and Ms. Brown to make sure he had marked the boundaries correctly; and, during this inspection the trio went through the area that Mr. Hathaway later realized was the Gall tract.

However, Mr. Fogg testified and inferred that Mr. Hathaway was given notice of the fact that the heirs owned an undivided one-fourth interest in the Gall tract when he went to check the tax map cards, because the two deeds referred to on the tax cards recite the heirs' interest in the Gall tract.

Upon arriving at the property, the first thing Mr. Hathaway did was create a road for ingress and egress through the property. The crew then began timbering the property. At one point when the crew was timbering the Gall tract, Ms. Brown came to the job site and informed the crew that they were on the Gall tract and should not be there. Mr. Hathaway testified that this was the first indication to him that the heirs were not the sole owners of the Gall tract. Shortly thereafter, Peggy Hadley, Lucille Chesser's daughter, contacted Mr. Hathaway expressing concern that logging was being done on their land. The appellees continued to timber the property until they were served with an injunction and forced to stop in February of 1991. The appellees had cut down 922 trees from the Gall tract.

On at least two occasions, in the spring of 1991, the appellees offered to remove the timber that had been cut down, place it in a saw mill and have the money put in an escrow account. In December of 1991, the appellants informed the appellees that it was their desire for the timber to be removed. However, as Mr. Hathaway testified, at this point he did not believe the timber had any redeemable value due to the passage of time. He further testified that he was unable to remove the timber because he was not afforded enough time.

The jury heard the case on June 25, 1992, and June 27, 1992, and at the conclusion of all the evidence the trial court directed a verdict in favor of the appellants and against the appellees for the value of the timber which had been cut, with such value to be determined by the jury. The trial court instructed the jury that pursuant to *W.Va. Code*, 61–3–48a [1983], treble damages could be recovered only if the jury found that the appellees' act of entering upon the land and cutting timber was done with willful, wanton or malicious intent. Punitive damages were not considered because the trial court refused the appellants' instruction on punitive damages. In addition to the verdict form requiring the jury to fix the stumpage value

of the Gall tract timber, the verdict form also contained a special interrogatory asking the jury: "Did the defendants, Timothy Hathaway and Kingsville Wood Products, Inc. know that the W.T. George heirs did not own 100% of the Gall Tract at the time they entered upon and cut timber on the Gall Tract?"

Ultimately, the jury found the stumpage value of the timber from the Gall tract to be $19,009.69; however, they responded to the special interrogatory by answering in the negative.

On September 23, 1992, the trial court denied the appellants' motion for a new trial. It is from the trial court's order of September 23, 1992, that the appellants appeal to this Court.

## II

The appellants raise three assignments of error on appeal: (1) the trial court erred in refusing to treble the damages in accordance with *W.Va.Code*, 61–3–48a [1983]; (2) the trial court erred in refusing to set aside the verdict and grant a new trial on the grounds that the jury's answer to the special interrogatory was contrary to the weight of the uncontroverted evidence; and, (3) the trial court erred in refusing to give appellants' proffered instruction number 3 on punitive damages. Furthermore, the appellees raise, as cross-assignments of error, that the trial court erred in refusing to allow the appellees to present evidence concerning the appellants' failure to mitigate damages; the trial court erred in refusing to give appellees' instruction number 7 on mitigation of damages; and finally, the trial court erred in denying appellees' motion to set aside the verdict and judgment, in part, and to grant a new trial in part.

■ The appellants' first contention is that the trial court erred in refusing to treble the damages in accordance with *W.Va.Code*, 61–3–48a [1983], which provides:

Any person who enters upon the land or premises of another without written permission from the owner of the land or premises in order to cut, damage or carry away or cause to be cut, damaged or carried away, any timber, trees, logs, posts, fruit, nuts, growing plant or product of any growing plant, shall be liable to the owner in the amount of three times the value of the timber, trees, growing plants or products thereof, which shall be in addition to and notwithstanding any other penalties by law provided.

The appellants argue that the trial court was incorrect in instructing the jury that, pursuant to the above-mentioned *Code* provision, treble damages could be recovered only if the jury found that the appellees' act of entering upon the land and cutting timber was done with willful, wanton or malicious intent because the statute contains no language requiring that wilful, wanton and malicious intent as a prerequisite to the assessment of damages.

The appellants further assert that a statute should be construed only where its language requires interpretation or may reasonably be considered ambiguous. The appellees assert that the trial court acted properly in interpreting the statute so strictly in that the statute is a penal statute compelling a strict construction.

■ It has been a well established point of law that: " 'Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein.' Syllabus, Point 1, *Dunlap v. State Compensation Director*, 149 W.Va. 266 [140 S.E.2d 448]." Syl. pt. 1, *Farmers & Merchants Bank of Keyser v. Haden*, 154 W.Va. 292, 175 S.E.2d 167 (1970).

■ In this case, the language within the statute in question is clear and unambiguous. There is no language which invokes a duty upon one to establish intent. This Court is of the opinion that the trial court erred in instructing the jury that, pursuant to the above-mentioned *Code* provision, treble damages could be recovered only if the jury found that the appellees' act of entering upon the land and cutting timber was done with willful, wanton or malicious intent. The statute simply states that if a person enters onto another's land "without written permission"

then he/she is "liable to the owner in the amount of three times the value of the timber." *See W.Va.Code,* 61–3–48a [1983].

Furthermore, the parties stipulated in the record that the appellees entered upon and cut timber on the Gall tract without the written or oral permission of the appellants. The appellants offered, but the trial judge refused, a jury instruction which stated in relevant part:

> The Court instructs the jury that the statutes of this State provide that any person who enters upon the land or premises of another without written permission from the owner of such land or premises in order to cut, damage or carry away or to cause to be cut, damaged or carried away any timber, trees, logs or posts, such person shall be liable to the owner of such land in the amount of three times the value of the timber[.]

This was the proper instruction that should have been given to the jury regarding the trespass and method of determining damages.

In syllabus point 5 of *Jenrett v. Smith,* 173 W.Va. 325, 315 S.E.2d 583 (1983) we recognized: "An instruction is proper if it is a correct statement of the law and if there is sufficient evidence offered at trial to support it." This was the proper instruction that should have been given because it was a correct statement of the applicable law in that it practically quoted the statute verbatim.

As a matter of law, based upon the parties' stipulation that the appellees did not receive written permission to cut the timber, the appellants are entitled to treble damages in the amount of $57,029.88. We remand this case to the trial court to enter an order awarding the appellants the treble damages set forth herein.

The appellants' second point of contention is the trial court erred in refusing to set aside the verdict and grant a new trial on the grounds that the jury's answer to the special interrogatory was contrary to the weight of the uncontroverted evidence. The appellees contend that there was sufficient evidence to support the jury's finding. As mentioned

earlier, the verdict form asked the jury whether the appellees knew that the heirs did not own 100% of the Gall tract at the time they entered upon and cut timber upon the Gall tract; and, the jury responded in the negative.

■ This Court, in syllabus point 4 of *Pote v. Jarrell,* 186 W.Va. 369, 412 S.E.2d 770 (1991), recognized that:

> ' "In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved." Syllabus Point 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1984).' Syl. pt. 1, *Pinnacle Mining v. Duncan Aircraft Sales,* 182 W.Va. 307, 387 S.E.2d 542 (1989).

From the transcript, it is obvious that the question as to whether Mr. Hathaway knew that the heirs did not exclusively own the Gall tract during the time the appellees were timbering was a hotly-contested issue. Mr. Hathaway's testimony, regarding the fact that he was unaware of a divided interest in the Gall tract, has been previously discussed in this opinion. Ms. Kelley and Mr. Fogg testified on behalf of the appellants that the appellees should have known that the heirs had only a fractional interest in the Gall tract, because of discussions they had with Mr. Hathaway. Moreover, the appellants contend that the appellees would have discovered this information had they conducted a title search.

The issues in this case were properly before the jury, sufficient evidence was presented, and the jury, after weighing the evidence, found that the appellees did not know, at the time they entered upon and cut timber upon the Gall tract, that the heirs were not the exclusive owners of the Gall tract. We reiterate the fact that whether the appellees acted intentionally is irrelevant because the damages are imputed due to the appellees'

violation of *W.Va.Code,* 61–3–48a [1983] (i.e., their failure to acquire written permission to enter and cut timber upon the land).

With this argument in mind, the appellants' final point of contention is that the trial court erred in refusing to give appellants' proffered jury instruction regarding punitive damages. More specifically, the appellants argue that the trial court was incorrect in forbidding the appellants from recovering both statutory treble damages and common law punitive damages. The appellees disagree.

In syllabus point 4 of *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982), we discussed the nature of punitive damages:

> 'Punitive or exemplary damages are such as, in a proper case, a jury may allow against the defendant by way of punishment for wilfulness, wantonness, malice, or other like aggravation of his wrong to the plaintiff, over and above full compensation for all injuries directly or indirectly resulting from such wrong.' Syllabus Point 1, *O'Brien v. Snodgrass,* 123 W.Va. 483, 16 S.E.2d 621 (1941).

There is no evidence within the record supporting the appellants' contention that the appellees acted maliciously, willfully or wantonly when entering upon the Gall tract and extracting the timber. Moreover, the jury found that the appellees were unaware of the fact that the heirs were not the exclusive owners of the Gall tract at the time of the entry upon the Gall tract and the cutting of the timber.

We should note that other jurisdictions have held that the law does not permit appellants to recover both punitive and treble damages for the same trespass to timber.

See *Baker v. Ramirez,* 190 Cal.App.3d 1123, 235 Cal.Rptr. 857 (1987); *Stoner v. Houston,* 265 Ark. 928, 582 S.W.2d 28 (1979); *Johnson v. Tyler,* 277 N.W.2d 617 (Iowa 1979); and, *Johnson v. Jensen,* 446 N.W.2d 664 (Minn. 1989).*

However, it is not necessary to resolve this issue in this case because we are of the opinion that the trial court was correct in refusing to instruct the jury regarding punitive damages in light of the fact that the evidence was insufficient to support such an instruction. See *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992).

On the appellees' cross-assignments of error, they argue that the trial court erred in refusing to allow the appellees to present evidence concerning the appellants' failure to mitigate damages; the trial court further erred in refusing to give appellees' instruction number 7 regarding mitigation of damages; and finally, the trial court erred in denying the appellees' motion to set aside the verdict and the judgment, in part, and to grant a new trial, in part. Simply put, their cross-assignments of error relate to a mitigation of damages issue.

Specifically, the appellees argue that the appellants should not be entitled to recover for any losses which could have been avoided by allowing the appellees, within a reasonable period of time, to collect the timber, market it and put the proceeds in an escrow account.

The appellants respond by arguing that the appellees' argument on the issue of mitigation of damages is unfounded. The appellants assert that the relevant statute, *W.Va. Code,* 61–3–48a [1983], states that an owner of timber is injured and subsequently dam-

---

* The award of treble damages and the possible recovery of additional or punitive damages is a complex issue addressed specifically by some states while handled in a more subtle or indirect fashion in other states.

Some statutes expressly provide for treble damages in lieu of punitive damages. If the plaintiff pursues the statutory action successfully, and award of treble damages is ·mandatory, but punitive damages would not be recoverable, even though they may have been recovered had a comparable common-law action been prosecut-

ed. In effect, a plaintiff must elect whether to pursue the statutory remedy or the common-law one, since awarding both statutory treble and punitive damages would constitute double recovery. Other statutes give the plaintiff the option of submitting the question of punitive damages to the jury, or of submitting only the question of actual damages to the jury and having the judge treble them, and if the jury's award is only for actual damages, they must be trebled.
22 Am.Jur.2d *Damages* § 817 (1988) (footnotes omitted).

aged when there is an entry on the property without written permission and the timber is cut, carried away or damaged. Thus, the appellants argue there was nothing the appellants did or could have done that would have affected their entitlement to damages, because there was entry without written permission and the damages for the cut timber were fixed by the stumpage value.

◼ In West Virginia, we have recognized that one generally has a duty to mitigate damages: "As a general rule a person whose property is endangered or injured must use reasonable care to mitigate the damages; but such person is only required to protect himself from the injurious consequence of the wrongful act by the exercise of ordinary effort and care and moderate expense." *Hardman Trucking, Inc. v. Poling Trucking Co. Inc.,* 176 W.Va. 575, 579, 346 S.E.2d 551, 555 (1986), *citing Oresta v. Romano Bros., Inc.,* 137 W.Va. 633, 650, 73 S.E.2d 622, 632 (1952).

◼ Once Ms. Brown and Ms. Hadley became aware that the appellees may be timbering on the appellants' property, they expressed concern to Mr. Hathaway. Mr. Hathaway continued to timber the property, and ultimately the appellants were forced to serve the appellees with an injunction. It is obvious that the appellants reasonably tried to protect their property from injurious consequences, therefore, we believe the appellants expended the ordinary effort and care to protect their property as required in *Hardman.*

Based upon the foregoing, the decision of the Circuit Court of Barbour County is affirmed, in part, reversed, in part, and remanded.

Affirmed, in part; reversed, in part, and remanded.