# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2022 Term**

_____

**No. 21-0313**

_____

**FILED**

**June 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**GREGORY S. BRADLEY AND JUDY JOHNSON BRADLEY,**
**Plaintiffs Below, Petitioners,**

**V.**

**ANDREA DALE DYE; LARRY JONES, JR., and**
**ROBERTA J. JONES, Individually and d/b/a JONES HAULING;**
**AND OTHER UNKNOWN DEFENDANTS,**
**Defendants Below, Respondents.**

_____

**Appeal from the Circuit Court of Marion County**
**The Honorable Patrick N. Wilson, Judge**
**Civil Action No. CC-24-2018-C-110**

**REVERSED AND REMANDED**

_____

**Submitted: March 16, 2022**
**Filed: June 14, 2022**

John R. Angotti, Esq.
David J. Straface, Esq.
Chad C. Groome, Esq.
Angotti & Straface, LC
Morgantown, West Virginia
Attorneys for the Petitioners

James W. Marshall, III, Esq.
Bailey & Wyant, PLLC
Martinsburg, West Virginia
Daniel T. LeMasters, Esq.
Bailey & Wyant, PLLC
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE WOOTON delivered the Opinion of the Court.**

**JUSTICE BUNN did not participate in the decision in this case.**

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."
Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

3.      "'In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff.  No action for negligence will lie without a duty broken.'  Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981)."  Syl. Pt. 4, *Jack v. Fritts*, 193 W. Va. 494, 457 S.E.2d 431 (1995).

4.      "'The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised.  The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?'  Syl. Pt. 3, *Sewell v.*

i

*Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988)." Syl. Pt. 8, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000).

5.     "The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Syl. Pt. 5, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000).

6.     "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Syl. Pt. 2, *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983).

7.     "Pursuant to West Virginia Code § 55-7-29(a) [2015], an award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." Syl. Pt. 12, *Jordan v. Jenkins*, 245 W. Va. 532, 859 S.E.2d 700 (2021).

**Wooton, Justice:**

Petitioners, Gregory S. Bradley and Judy Johnson Bradley ("the Bradleys"), seek relief from an order of the Circuit Court of Marion County, entered on March 17, 2021, granting summary judgment in favor of the Respondent, Ms. Andrea Dale Dye ("Ms. Dye") in this action for timber trespass. The Bradleys raise three errors: (1) the circuit court erred by finding that Ms. Dye did not physically enter their land and, therefore, she could not have violated West Virginia Code § 61-3-48a (2020), the statute establishing a civil penalty for cutting, damaging, or carrying away timber and other vegetation; (2) the circuit court erred with respect to their negligence claim by finding that Ms. Dye owed them no duty; and (3) the circuit court erred by finding that Ms. Dye's conduct could not support a claim for punitive damages. After careful review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we conclude that the circuit court erred by granting summary judgment to Ms. Dye. We therefore reverse the circuit court's summary judgment order and remand this case for additional proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The Bradleys and Ms. Dye, one of the defendants in the action below, own contiguous property in rural Marion County, West Virginia. Ms. Dye resides on her

property, which is located along Flaggy Meadow Road.[1]  The Bradleys live in the Commonwealth of Virginia and periodically visit their Marion County property.[2]  The Bradleys' property, which is located behind and up the hill from Ms. Dye's property, is landlocked and may be accessed only from Flaggy Meadow Road through an easement across Ms. Dye's land.

Located on the Bradleys' land, uphill from Ms. Dye's home, is a gas wellhead that serves her home.  There is a gas easement from Flaggy Meadow Road up to a clearing where the wellhead sits.  A lower portion of this road, which crosses Ms. Dye's property, also serves as the easement providing the Bradleys with access to their land.  In connection with the litigation below, Ms. Dye provided deposition testimony in which she explained that she had believed the wellhead was on her land.  To keep unauthorized people from using the area to hunt and ride ATVs, she personally walked up the hill on the gas well easement and posted approximately ten to fifteen no-trespassing signs "here and there."  Some of these signs identified Ms. Dye as the owner of the property upon which they were

---

[1] Ms. Dye owns property on both sides of Flaggy Meadow Road.  The portion of her land relevant to this case is a tract of approximately 10.25 acres upon which her home sits.  She owns another tract of approximately 2.25 acres across the road from her home, but that tract was not timbered and is not at issue in this appeal.

[2] The Bradleys' land encompasses approximately 65 acres.

placed, which actually was land belonging to the Bradleys. Ms. Dye also has stated that she has no idea where the boundaries to her land lie.[3]

Ms. Dye was approached by another defendant in the action below, Mr. Larry Jones, Jr. ("Mr. Jones"), about obtaining a temporary easement across her land to remove timber from the Hayeses' land, which apparently bordered both Ms. Dye's and the Bradleys' property. Mr. Jones also inquired about logging Ms. Dye's land. On January 10, 2016, Ms. Dye and Mr. Jones, d/b/a Jones Hauling, entered a "Timber Sale Contract," with Ms. Dye identified as "Seller" and Mr. Jones identified as "Buyer." The contract was for the sale of "all standing timber, as herein defined, growing on and forming a part of real property owned by Seller."[4] Additionally, "Buyer agree[d] and covenant[ed] that he is an independent contractor;" represented "that he is personally familiar with this property, and the boundaries [sic] lines delineating the area to be logged;" and pledged "not to cut any line tree or trees on land owned by other third parties over which a right of way has not been procurred [sic]." According to Ms. Dye, Mr. Jones asked her for a plat of her property, and she provided one to him, but she never walked her land with him. She also never observed the logging operation or the locations being logged.

---

[3] Although she had a plat or map of what she believed to be her land, she explained that she did not know how to read it.

[4] The timber was described in the contract as "all logs from all species, 14 inches and over, at breast high."

To facilitate the logging, Ms. Dye removed a cattle gate that crossed the easement that leads up to the gas wellhead.[5]  Ms. Dye also granted Jones Hauling the temporary easement Mr. Jones had requested, purportedly through her property, to be used to remove timber from a tract of land that belonged to the Hayeses.  However, Ms. Dye explained that Mr. Jones

> needed to take his equipment up through that alleyway and up on top of the hill and he wanted to know if he could do that, if he could pay like a right-of-way easement . . . .  He told me he would be timbering for Mr. Hayes and needed access up through there and I granted it to him.

The temporary easement granted by Ms. Dye allows Mr. Jones' use of a right-of-way through her property, but the "top of the hill" area discussed appears to be the Bradleys' land.

---

[5] Although the Bradleys' brief indicates that this gate divided the Bradley property from the Dye property, and the Bradleys assert that Ms. Dye's removal of the gate "would have . . . made it appear that Respondent Dye's property and the Bradleys' property were one in the same," we find the record to be vague on this particular point.  It appears that there were two gates placed across the easement leading from Flaggy Meadow Road to the Bradleys' property, one that is on Ms. Dye's property and another that designates the entrance to the Bradleys' property.  It is unclear from the record before us which gate Ms. Dye took down to facilitate the logging operation; however, because we must view all reasonable inferences in the light most favorable to the Bradleys, we accept their contention that the gate removed by Ms. Dye separated her land from theirs. *See Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995) ("[W]e must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion [for summary judgment].").

During the summer of 2017, on a visit to their Marion County property, the Bradleys discovered that their land had been logged. It was later determined that approximately 300 trees had been removed from their property, and about twenty-nine acres of their land had suffered damage from the timber theft. In an apparent effort to gain access to valuable trees, other trees and brush were cut and left behind. A trench also had been cut into their property. According to the Bradleys, this damage has caused slips and flooding and has otherwise affected the water flow on their land. The Bradleys estimate that the damage to their land and anticipated restoration costs total approximately $92,972.00. They further estimate the value of the stolen timber to be approximately $25,420.49.

The Bradleys reported the theft, and an agent of the West Virginia Division of Natural Resources ("DNR"), Law Enforcement Section, conducted an investigation and confirmed the theft of the Bradleys' trees. The officer's report notes the presence of signs that displayed the name and address of someone who was not the owner of the property, i.e., Ms. Dye. Information about the theft was provided to the county prosecutor, who declined to pursue criminal charges, so the Bradleys were advised that their only recourse was to pursue their loss as a civil matter. Accordingly, on July 25, 2018, the Bradleys filed a complaint in the Circuit Court of Marion County. The named defendants included Ms. Dye, Mr. Jones, and his wife Roberta J. Jones ("Mrs. Jones"), individually and d/b/a Jones Hauling ("collectively the Jones co-defendants"), and other unknown defendants. The

5

Bradleys sought to recover for the theft of their trees, the destruction of their land, and treble damages pursuant to West Virginia Code § 61-3-48a. Thereafter, Ms. Dye filed her answer and affirmative defenses on August 30, 2018, along with a cross-claim against all other defendants. On December 11, 2018, Mr. and Mrs. Jones filed an answer.[6] Depositions were taken of Ms. Dye and the Bradleys, after which Ms. Dye filed a motion for summary judgment. The circuit court granted Ms. Dye's motion for summary judgment by order entered on March 17, 2021. This appeal followed.

## II.

## STANDARD OF REVIEW

Our review of this appeal from the circuit court's summary judgment order is plenary. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Therefore,

---

[6] Ms. Dye contends that the answer filed by Mr. and Mrs. Jones should not be considered as it is "unsworn, unsigned, and unauthenticated[.]" While this document may not meet the technical requirements for an answer, Ms. Dye waived her opportunity to challenge the document by accepting it as an answer below. *See Hopkins v. DC Chapman Ventures, Inc*., 228 W. Va. 213, 220, 719 S.E.2d 381, 388 (2011) ("This Court has consistently held that 'silence may operate as a waiver of objections to error and irregularities[.]'" (citations omitted)). Mr. and Mrs. Jones filed their answer as self-represented litigants, and it was designated to be their answer by the circuit court clerk. After the answer was filed, Ms. Dye did not seek a default judgment against the Jones co-defendants in relation to a cross-claim she had asserted against them. Instead, she filed requests for admissions against the Jones co-defendants and, when those went unanswered, she filed a motion to have her requested admissions deemed admitted. She then filed a motion for summary judgment against the Jones co-defendants. Therefore, we will treat this document as the Jones co-defendants' answer for purposes of this appeal.

> [i]n reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is "'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party."

*State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42, 829 S.E.2d 35, 42 (2019) (quoting *Fayette Co. Nat'l Bank v. Lilly*, 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 396 (2014)). In this regard, it is well settled that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Mindful of these standards, we proceed to address the decisive issue raised in this appeal.

## III.

## DISCUSSION

The Bradleys challenge the circuit court's summary judgment ruling on three grounds: (1) that the circuit court improperly concluded that Ms. Dye could not be liable under West Virginia Code § 61-3-48a, because she did not physically enter the Bradleys' land; (2) that the circuit court improperly concluded that Ms. Dye owed the Bradleys no duty of care and, therefore, could not be liable under the Bradleys' negligence theory; and

7

(3) that the circuit court erroneously found there was no evidence to support the Bradleys' claim for punitive damages. We will address each alleged error in turn.

### *A. West Virginia Code § 61-3-48a*

The Bradleys seek treble damages from Ms. Dye under the following statute:

> [a]ny person who enters upon the land or premises of another without written permission from the owner of the land or premises in order to cut, damage or carry away *or cause to be cut, damaged or carried away*, any timber, trees, logs, posts, fruit, nuts, growing plant or product of any growing plant, shall be liable to the owner in the amount of three times the value of the timber, trees, growing plants or products thereof, which shall be in addition to and notwithstanding any other penalties by law provided.

W. Va. Code § 61-3-48a (emphasis added). In granting summary judgment to Ms. Dye, the circuit court found that "West Virginia Code § 61-3-48a requires that Defendant Dye physically entered the land or premises of Plaintiffs to cut, damage or carry away or cause to be cut, damaged or carried away, any timber, trees, or logs." The court then concluded, in relevant part, that

> 9. Defendant Dye didn't physically enter the land or premises of Plaintiffs to cause to be cut, damaged or carried away, any timber, trees, or logs . . .

> 10. There is no genuine issue of fact as to Plaintiffs' claim that Defendant Dye allegedly physically entered the land or premises of Plaintiffs to cut, damage or carry away or cause to be cut, damaged or carried away, any timber, trees, or logs.

8

The pertinent inquiry in determining the propriety of summary judgment in this case is whether there is a genuine question of fact that Ms. Dye entered the Bradleys' land, without written permission, and caused "to be cut, damaged or carried away, any timber, trees, logs, posts, fruit, nuts, growing plant or product of any growing plant" belonging to the Bradleys. *Id*. § 61-3-48a. In making this determination, the evidence must be viewed in the light most favorable to the Bradleys as the parties opposing summary judgment. *See Harris v. Jones*, 209 W. Va. 557, 561, 550 S.E.2d 93, 97 (2001) ("[T]he benefit of the doubt is to be given to the nonmoving party."). In other words, "[b]oth this Court and the court below 'must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Painter*, 192 W. Va. at 192, 451 S.E.2d at 758). In fact,

> [w]e have traditionally adopted a conservative stance toward the use of summary judgment, reasoning that "[a] party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances." *Aetna Casualty & Sur. Co.*, 148 W. Va. at 171, 133 S.E.2d at 777 (citing 3 Barron and Holtzoff, *Federal Practice and Procedure*, Rules Edition, § 1234)[.]

*Cunningham v. W. Va.-Am. Water Co.*, 193 W. Va. 450, 454, 457 S.E.2d 127, 131 (1995), *holding modified on other grounds by Foster v. City of Keyser*, 202 W. Va. 1, 501 S.E.2d 165 (1997).

9

Based upon our review of the record, we find there was ample evidence to demonstrate the existence of a material question of fact as to whether Ms. Dye entered the Bradleys' land, without written permission, and caused their timber to be cut, damaged, and/or carried away. *See* W. Va. Code § 61-3-48a. Ms. Dye has admitted that she herself posted "no trespassing" signs, some of which declared that she was the owner of the land upon which they were posted. Despite asserting her ownership over this land, though, she further admitted that she did not know the boundaries of her property and that she made no effort to discover those boundaries. The signs were actually posted on the Bradleys' land, and Ms. Dye has produced no evidence that she was granted written permission by the Bradleys to enter their land. The fact that Ms. Dye believed she was on her own land when she posted the signs is of no moment, as

> W. Va. Code, 61-3-48a[] repels any inference that it is concerned with *mens rea*. Recovery is permitted under this statute for the mere removal or cutting of someone's trees without their written consent. In any event, the literal terms of the statute are ultimately indifferent to conduct that is willful or results from the wrongdoer's careless inattention to boundary lines. By its very language, W. Va. Code, 61-3-48a, deals with trespassers who have no evil intent. The statute is concerned with the cutting, damaging, and taking of trees, not with the state of mind of the wrongdoer.

*Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 133-34, 464 S.E.2d 771, 775-76 (1995) (footnote omitted); *see also Chesser by Hadley v. Hathaway*, 190 W. Va. 594, 597, 439 S.E.2d 459, 462 (1993) (per curiam) ("[T]he language within the statute in question [West

10

Virginia Code section 61-3-48a] is clear and unambiguous.  There is no language which invokes a duty upon one to establish intent . . . .").

The record further reflects that Ms. Dye entered the timber sale contract with the Jones co-defendants, and granted them a temporary easement that, according to her discussion with Mr. Jones, allowed him to take his equipment "up on top of the hill" onto property that actually belonged to the Bradleys.  This also placed the Jones co-defendants in the area where they could observe the signs asserting Ms. Dye's ownership of the land. Finally, she removed a fence that, according to the Bradleys, separated her property from theirs, thereby creating the appearance that Ms. Dye's property and the Bradleys' property were one and the same.[7]

The circuit court additionally concluded that

> there is no evidence in the record to put forth a genuine issue of material fact to support Plaintiffs' position that [the Jones co-defendants or their] employees and/or agents relied upon any action of Defendant Dye to cause [them] to cut, damage or carry away any timber, trees, or logs.

---

[7] *See supra* note 5.

11

However, this conclusion ignores the answer filed by the Jones co-defendants, which indicates that Ms. Dye told them she owned the land upon which they timbered and further relates that the Jones co-defendants "walked all property lines she [Ms. Dye] set."[8]

Accordingly, based upon our review of the evidence in the light most favorable to the Bradleys, we find that there are material questions of fact as to whether Ms. Dye's actions caused the Bradleys' timber to be cut, damaged, and/or carried away such that she is liable for their loss under West Virginia Code § 61-3-48a.[9] Therefore, the circuit court erred by granting summary judgment to Ms. Dye on this ground.[10]

---

[8] *See supra* note 6 for a discussion about this answer.

[9] To the extent that this is a question of causation, we have found in the context of negligence that "causation is a factual issue." *Cunningham*, 193 W. Va. at 455, 457 S.E.2d at 132; s*ee also Mays v. Chang*, 213 W. Va. 220, 224, 579 S.E.2d 561, 565 (2003) (commenting that "questions of proximate cause are often fact-based issues reserved for jury resolution").

[10] In connection with this assignment of error, the Bradleys additionally argue that the circuit court erred by concluding that Ms. Dye was not vicariously liable for a violation of West Virginia Code § 61-3-48a under partnership, joint venture, or agency theories. We summarily reject the partnership and joint venture theories as the Bradleys have identified no persuasive evidence to support them. Their partnership theory is based upon an obvious typographical error in the logging contract that identified Ms. Dye, herself, as a partnership. We find no language in the logging contract demonstrating a partnership was formed between Ms. Dye and the Jones co-defendants. Similarly, there is no evidence that Ms. Dye exercised any management or control over the timbering operation, which is a necessary element of a joint venture. *See Armor v. Lantz*, 207 W. Va. 672, 680, 535 S.E.2d 737, 745 (2000) (observing that "'[a]n essential element of a . . . joint venture is the right of joint participation in the management and control of the business'" (quoting *Bank of California v. Connolly*, 111 Cal. Rptr. 468, 478 (Cal. Ct. App 1973))).

(continued . . . )

## B. *Negligence*

The Bradleys next argue that the circuit court erred by granting summary judgment to Ms. Dye as to their negligence claim based upon the court's conclusion that Ms. Dye owed no duty to the Bradleys.

> "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, *Parsley v. General Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981)."

Syl. Pt. 4, *Jack v. Fritts*, 193 W. Va. 494, 457 S.E.2d 431 (1995). Thus, without a duty owed, Ms. Dye could not be exposed to the Bradleys' negligence claim. To determine if there is a duty owed, we look to the foreseeability of harm resulting from the complained-of conduct.

> "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syl. Pt. 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

Syl. Pt. 8, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000). Nevertheless,

> while foreseeability of risk is a primary consideration in determining the scope of a duty an actor owes to another,

---

Finally, the Bradleys assert that the Jones co-defendants were agents of Ms. Dye. We decline to assess this theory and leave it to the circuit court on remand to assess the Bradleys' arguments and evidence. *See, e.g.*, Syl. Pt. 6, *Shaffer v. Acme Limestone Co.*, 206 W. Va. 333, 524 S.E.2d 688 (1999) (discussing the illegal work exception to the independent contractor defense).

"[b]eyond the question of foreseeability, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection[.]" [*Robertson v. LeMaster*, 171 W. Va. 607, 612, 301 S.E.2d 563, 568 (1983)]. "Such considerations include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Id.*

*Aikens*, 208 W. Va. at 491, 541 S.E.2d at 581. Relevant to this action,

the obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk which negligent conduct foreseeably entails.

*Id*. (quoting 2 F. Harper & F. James, *The Law of Torts* § 18.2 (1956)). These are questions of law to be determined by the court.

The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.

*Aikens*, 208 W. Va. at 488, 541 S.E.2d at 578, Syl. Pt. 5.

Here, Ms. Dye admits that she did not know the boundaries of her land; she even had a plat of the same but claims that she could not read it. Nevertheless, without making any attempt to learn the actual boundaries of her land, she went onto the Bradleys' land and posted signs declaring herself as its owner. There also is evidence in the record, in the form of the Jones co-defendants' answer and Ms. Dye's own testimony regarding

14

the extent of the right-of-way she granted to Mr. Jones, indicating that she verbally represented to the Jones co-defendants that she owned the land that they logged, which included the Bradleys' property. Such conduct will give rise to a duty of care when the actor realizes, or should realize, that it has created an unreasonable risk of harm. "One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Syl. Pt. 2, *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983).

Based upon her above-described conduct, Ms. Dye should have realized that she created an unreasonable risk that the Bradleys' land would be logged by the Jones co-defendants; therefore, she owed the Bradleys a duty of care to prevent such logging. As such, the circuit court erred in granting summary judgment to Ms. Dye based upon its finding that she owed no duty to the Bradleys.

### C. Punitive Damages

Finally, the Bradleys contend that the circuit court erred and made improper findings of fact in granting summary judgment to Ms. Dye on their claim for punitive damages. With respect to punitive damages, this Court has held that

> [p]ursuant to West Virginia Code § 55-7-29(a) [2015], an award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and

15

convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

Syl. Pt. 12, *Jordan v. Jenkins*, 245 W. Va. 532, 859 S.E.2d 700 (2021); *accord* W. Va. Code § 55-7-29(a) (2016).

In granting summary judgment to Ms. Dye on the issue of punitive damages, the circuit court made the following findings:

> 82.    Defendant Dye never engaged in any actions that would permit punitive damages to be considered against her or that she engaged in conduct "with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others."
>
> 83.    Again, Defendant Dye entered into a contract with the Co-Defendants to timber her property. . . .
>
> 84.    Defendant Dye never trespassed on Plaintiffs' property bringing forth damages or to cause damages to be brought forth by Co-Defendants . . . .
>
> 85.    Plaintiffs cite to no evidence that she acted with malice toward Plaintiffs or with a conscious, reckless and outrageous indifference to their health safety and welfare.

While the circuit court correctly found that Ms. Dye entered a contract with the Jones co-defendants to timber "her property," the evidence shows that Ms. Dye entered the Bradleys' property and posted signs declaring her ownership of the same. By doing so,

16

she signaled to others, including the Jones co-defendants, that the Bradleys' land was "her property." She did this without making any effort to determine whether she actually was on her own land when she posted the signs, as demonstrated by the following exchange that occurred during her deposition:

> Q.    When you were putting up the No Trespassing signs, were you concerned that maybe you were posting somebody's property that you didn't own?
>
> A.    No.
>
> Q.    It didn't bother you?
>
> A.    I never thought about it.

Finally, there is evidence that Ms. Dye verbally professed her ownership of the Bradleys' land to the Jones co-defendants. We find this evidence is sufficient to create a material question of fact as to whether Ms. Dye's conduct was carried out "with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." *Jordan*, 245 W. Va. at 540, 859 S.E.2d at 708, Syl. Pt. 12. The circuit court's findings to the contrary are erroneous. Therefore, we conclude that the circuit court erred by granting summary judgment to Ms. Dye on the issue of punitive damages.

17

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the March 17, 2021, summary judgment order of the Circuit Court of Marion County, and we remand this case for additional proceedings consistent with this opinion.

Reversed and Remanded.